COPY

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

SCOTT ALEXANDER
**PLAINTIFF**

Use below number on
all future pleadings

-- vs --

No. A 2100378
SUMMONS

PNK OHIO LLC DBA BELTERRA PARK
**DEFENDANT**

PNK OHIO LLC DBA BELTERRA PARK CASINO CINCINNATI
6301 KELLOGG RD                     D-1
CINCINNATI OH 45230

You are notified
that you have been named Defendant(s) in a complaint filed by

SCOTT ALEXANDER
1435 WOODBURY GLEN DR
AMELIA OH 45102

Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.

Name and Address of attorney
MATTHEW G BRUCE
11260 CHESTER ROAD
SUITE 825
CINCINNATI        OH        45246

AFTAB PUREVAL
Clerk, Court of Common Pleas
  Hamilton County, Ohio

By  RICK HOFMANN
                              Deputy

Date:   February 3, 2021



D130960942

**EXHIBIT A**



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
January 29, 2021 03:47 PM
     AFTAB PUREVAL
    Clerk of Courts
  Hamilton County, Ohio
  CONFIRMATION 1029268
```

**SCOTT ALEXANDER**                    **A 2100378**

**vs.**
**PNK OHIO LLC DBA**
**BELTERRA PARK CASINO**
**CINCINNATI**

**FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND**

**PAGES FILED: 12**

EFR200

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SCOTT ALEXANDER<br>1435 Woodbury Glen Dr.<br>Amelia, OH 45102 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| PNK (OHIO), LLC<br>d/b/a BELTERRA PARK CASINO<br>CINCINNATI<br>6301 Kellogg Rd.<br>Cincinnati, OH 45230 | )<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>PNK (Ohio), LLC<br>d/b/a Belterra Park Casino Cincinnati<br>c/o Corp. Service Co. (Stat. Agent)<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff Scott Alexander, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES, JURISDICTION, & VENUE

1. Alexander is a resident of the city of Amelia, Clermont County, state of Ohio.

2. Defendant PNK (OHIO), LLC d/b/a BELTERRA PARK CASINO CINCINNATI ("Belterra") is a domestic corporation that conducts business within the state. The events that give rise to the claims for relief in this Complaint occurred at Belterra's location at 6301 Kellogg Rd., Cincinnati, OH 45230.

3. Belterra is, and was at all times hereinafter mentioned, Alexander's employer within the meaning of Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq., and R.C. § 4112.01(A)(2).
4. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).
5. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3), and/or (6).
6. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

7. Alexander is a former employee of Belterra.
8. At all times noted herein, Alexander was fully qualified for and could fully perform the essential functions of his job.
9. Alexander worked for Belterra as a security officer from April 2018 until Belterra terminated Alexander's employment on or about August 11, 2020.
10. Alexander is 54 years old and is disabled due to his sarcoidosis and diabetes, and thus is in protected classes for his age and disabilities, respectively.
11. Alexander was previously a security manager for the Horseshoe Casino in Cincinnati and was brought over to Belterra.
12. Alexander had a semi-formal interview with Bryan (LNU, security manager, late 40s/early 50s) and had Carly (LNU, HR/hiring manager, mid-20s) extend him a job offer.
13. Alexander had basically zero issues throughout 2018 with Belterra.
14. Near the end of 2018, however, Alexander's medical conditions began to act up. In June, he fell unconscious at work and spent a few days at the hospital.

2

15. Alexander kept Belterra informed of the issue, constituting the company's notice of his disabilities.
16. Notably, Alexander was not given information regarding FMLA or short-term disability leave at this time.
17. In or around early 2019, Alexander's sarcoidosis acted up further and caused terrible neuropathy in his legs.
18. This issue was compounded by Alexander's diabetes, which caused extreme exhaustion and lack of feeling in his legs. He gave notice of the issues to his supervisor, Tim Keefe (late 20s).
19. From then through summer 2019, Alexander had a couple of falls at work.
20. While in recovery from those falls, Alexander also learned that he had bone issues, including some spurs in his spine. He mentioned the same to Keefe.
21. In or around autumn 2019, the dispatcher left Belterra. Alexander was asked to step in part-time in that role, though was not given any title change as a result.
22. Alexander asked to be in the position permanently because of his disabilities, but his request was rejected.
23. Kareem Riley (night-shift security manager, early 30s) did not cite any reason for this refusal. This was a failure to accommodate Alexander's disabilities.
24. In or around November 2019, the previous dispatcher returned to the position, forcing Alexander back to his patrolling duties.
25. Around that time, as Alexander stepped off a bus, his legs gave out from under him, causing a fall. Luckily, he was not injured, but he filed an incident report anyway.

3

26. Occasionally going forward, Alexander filled the dispatch role again, including during one incident where his leg caught on the chair and caused another fall without injuries. He filed an incident report for that too.

27. Between December 2019 and February 2020, Alexander received a call from security's HR business partner (name/age unknown, female, "NU").

28. Alexander tried to discuss his disabilities, but instead of trying to accommodate them, NU and Tony Hacker (day-shift security manager, mid-50s) instead took Alexander off work entirely unless he could return without restrictions.

29. Notably, Alexander did not have any restrictions at that time, but they wanted a doctor's note confirming the same.

30. This clearly demonstrated that Belterra perceived Alexander as disabled, irrespective of whether or not he actually was disabled (though he indeed was).

31. Alexander complained about this disparate treatment to his superiors and HR, but his complaints were ignored.

32. Alexander tried to work with his doctor for minor restrictions (e.g. a 15 minute break of other hour), but those restrictions were rejected. This was another failure to accommodate his disabilities.

33. Defendant later provided Alexander with FMLA information and documentation, which Alexander completed and gave to Belterra in or around late February 2020.

34. Some time in early 2020, Defendant acquired the casino from its previous owner.

35. On or about February 27, 2020, Alexander got a note from his doctor keeping him on restrictions until March 16, 2020.

4

36. Alexander would not have any restrictions after that day, however. He turned in the note to HR on or about March 1, but HR told him to send the information to corporate.

37. Alexander then took the information to corporate, who then turned him back to his immediate leadership. He did so.

38. On or about March 13, 2020, the casino closed due to the COVID-19 pandemic and most of its employees (including Alexander) were furloughed, though Alexander was unaware until a few weeks later.

39. On or about June 19, 2020, Alexander learned that his security coworkers had been called back to work, though he had not. No reason was cited for this adverse action.

40. The casino opened again in full on or about June 28, 2020, but Alexander was still not called back to work.

41. Alexander eventually contacted corporate regarding his denied Unemployment Benefits (he was labeled as being on a leave of absence).

42. On or about August 28, 2020, Alexander learned of his termination from August 11, 2020.

43. Alexander had been in communications regarding his FMLA even beyond August 11, but apparently his employment was terminated that day anyway without any notice or reason cited.

44. Defendant's termination of Alexander was an adverse employment action against him.

45. Defendant's purported reason for (or lack thereof) Alexander's termination is pretextual.

46. Defendant actually terminated Alexander's employment discriminatorily against his actual and/or perceived disabilities and age, and/or to interfere with his FMLA rights.

47. As a result of Defendant's acts and omissions above, Alexander has suffered damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.

48. Alexander restates each and every prior paragraph of this Complaint, as if it were fully restated herein.
49. Due to his health issues described *supra*, Alexander was disabled within the meaning of R.C. § 4112.02.
50. Belterra was aware Alexander was disabled under R.C. § 4112.02.
51. In the alternative, due to Alexander's various health issues described herein, Belterra perceived Alexander as disabled under R.C. § 4112.02.
52. Alexander's disabilities substantially impaired one or more major life activities under R.C. § 4112.02.
53. Despite his disabling conditions, Alexander was still able to perform the essential functions of his job, with or without a reasonable accommodation.
54. R.C. § 4112.02 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.
55. Belterra's termination of Alexander was an adverse employment action against him.
56. Belterra's purported reason (or lack thereof) for Alexander's termination was pretextual.
57. Belterra actually terminated Alexander's employment due to his actual or perceived disabilities.
58. Belterra violated R.C. § 4112.02 by terminating Alexander's employment because of his actual and/or perceived disabilities.
59. As a direct and proximate cause of Defendant's conduct, Alexander has suffered and will continue to suffer damages.

## COUNT II: FAILURE TO ACCOMMODATE

60. Alexander restates each and every prior paragraph of this complaint, as if it were fully restated herein.
61. Alexander informed Defendant of his disabling condition.
62. Alexander requested accommodations from Defendant to assist with his disabilities.
63. Alexander's requested accommodations were reasonable.
64. There was an available accommodation that would have been effective and would have not posed an undue hardship to Defendant.
65. Defendant failed to engage in the interactive process of determining whether Alexander needed an accommodation.
66. Defendant failed to provide an accommodation.
67. Defendant violated R.C. §4112.02 by failing to engage Alexander in the interactive process.
68. Defendant violated R.C. §4112.02 by failing to provide Alexander a reasonable accommodation.
69. As a direct and proximate result of Defendant's conduct, Alexander suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.

70. Alexander restates each and every prior paragraph of this Complaint, as if it were fully restated herein.
71. Alexander is in a protected class for his age (discussed *supra*).

7

72. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

73. Defendant treated Alexander differently than other similarly situated employees based upon his age.

74. Defendant replaced Alexander with someone outside his protected age class, upon information and belief.

75. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Alexander differently from other similarly situated employees outside his protected class.

76. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Alexander's age.

77. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Alexander's age.

78. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Alexander's employment because of his age.

79. Defendant's termination of Alexander's employment was an adverse employment action against him.

80. Defendant's proffered reason for (or lack thereof) Alexander's termination was pretextual.

81. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Alexander's employment because of his age.

82. Alexander incurred emotional distress damages as a result of Defendant's conduct described herein.

83. As a direct and proximate result of Defendant's acts and omissions, Alexander has suffered and will continue to suffer damages.

## COUNT IV: RETALIATION

84. Alexander restates each and every prior paragraph of this complaint, as if it were fully restated herein.

85. During his employment, Alexander made multiple complaints of discrimination.

86. After Alexander's protected complaints, Defendant terminated his employment.

87. Alexander's termination was an adverse employment action against him.

88. Defendant's adverse employment actions were retaliatory in nature based on Alexander's protected complaint.

89. Pursuant to R.C. § 4112.02 et seq., it is an unlawful discriminatory practice retaliate against those who make protected complaints of discrimination.

90. As a direct and proximate result of Defendant's acts and omissions, Alexander has suffered and will continue to suffer damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

91. Alexander restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

92. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

93. Belterra is a covered employer under the FMLA.

94. Alexander was an employee eligible for FMLA due to both his severe health conditions and his adoption of a child.

95. During his employment, Alexander qualified for and inquired FMLA leave due to his disabilities.

9

96. During his employment with Belterra, Alexander was unable to receive FMLA benefits for his disabilities.

97. Defendant unlawfully interfered with Alexander's exercise of his rights under the FMLA in violation of § 105 of the FMLA and § 825.220 of the FMLA regulations.

98. Defendant's refusal to provide Alexander with information pertaining to FMLA leave and/or permit Alexander to take FMLA leave violated and interfered with his FMLA rights.

99. As a direct and proximate result of Defendant's conduct, Alexander suffered and will continue to suffer damages.

100. As a direct and proximate result of Defendant's conduct, Alexander is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## DEMAND FOR RELIEF

WHEREFORE, Alexander demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Plaintiff's personnel file of all negative documentation;

c) An award against Defendant for compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Plaintiff's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

                Respectfully submitted,

                /s/ *Matthew G. Bruce*
                Matthew Bruce (0083769)
                Trial Attorney
                Evan R. McFarland (0096953)
                THE SPITZ LAW FIRM
                Spectrum Office Tower
                11260 Chester Road, Suite 825
                Cincinnati, Ohio 45246
                Phone: (216) 291-0244 x173
                Fax:   (216) 291-5744
                Email: Matthew.Bruce@SpitzLawFirm.com
                Email: Evan.McFarland@SpitzLawFirm.com

                *Attorneys for Plaintiff Scott Alexander*

## JURY DEMAND

Plaintiff Scott Alexander demands a trial by jury by the maximum number of jurors permitted.

*/s/ Matthew G. Bruce*
Matthew Bruce (0083769)